IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEFFREY D. BARNETT,

       Plaintiff,

v.

BAC HOME LOAN SERVICING,
L.P., FEDERAL NATIONAL
MORTGAGE ASSOCIATION fka
FANNIE MAE, and RECONTRUST
COMPANY, N.A.,

       Defendants.

11-CV-213-ST

TEMPORARY RESTRAINING
ORDER

KELLY L. HARPSTER
Harpster Law, LLC
4800 S.W. Meadow Road
Suite 300
Lake Oswego, OR 97035
(503) 534-3686

       Attorneys for Plaintiff

1 - TEMPORARY RESTRAINING ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#2) for a Temporary Restraining Order and Preliminary Injunction.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion to the extent that the Court **TEMPORARILY RESTRAINS** Defendants from proceeding with the February 28, 2011, foreclosure sale of Plaintiff's property.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint:

On September 20, 2006, Plaintiff Jeffrey D. Barnett entered into an InterestFirst Adjustable Rate Note with Columbia River Bank secured by property located at 3769 N.W. First Court, Hillsboro, Oregon. Plaintiff also entered into a Trust Deed as to that property with Plaintiff as grantor; First American Title Company as Trustee; and Mortgage Electronic Registration System (MERS) solely as nominee for the beneficiary, Columbia River Bank. The Trust Deed provided, among other things, that

> Lender shall give notice to Borrower prior to
> acceleration following Borrower's breach of any
> covenant or agreement in this Security Instrument
> . . . . The notice shall specify: (a) the
> default; (b) the action required to cure the
> default; (c) a date, not less than 30 days from
> the date the notice is given to Borrower, by which
> the default must be cured; and (d) that failure to
> cure the default on or before the date specified
> in this notice may result in acceleration of the

2 - TEMPORARY RESTRAINING ORDER

> sums secured by this Security Instrument and sale
> of the Property.  The notice shall further inform
> Borrower of the right to reinstate after
> acceleration and the right to bring a court action
> to assert the non-existence of a default or any
> other defense of Borrower to acceleration and
> sale.  If the default is not cured on or before
> the date specified in the notice, Lender at its
> option may require immediate payment in full of
> all sums secured by this Security Instrument
> without further demand and may invoke the power of
> sale and any other remedies permitted by
> Applicable Law.

Compl., Ex. A at 12.  Pursuant to the Trust Deed MERS held, at

most, no more than "bare legal title" to Columbia River Bank's

beneficial interest in the Trust Deed and never had any legal or

beneficial interest in the Note.

The Trust Deed was recorded in Washington County, Oregon on

September 25, 2006.

Plaintiff alleges on information and belief that after

September 20, 2006, Columbia River Bank sold or otherwise

transferred the Note and its beneficial interest in the Trust

Deed to Countrywide Home Loans, Inc.  Thereafter, Countrywide

transferred its interest in the Note and Trust Deed to Defendant

Federal National Mortgage Association (Fannie Mae).  None of

these transfers were recorded in the real property records of

Washington County, Oregon.

On December 11, 2009, Defendant BAC Home Loans Servicing,

L.P., acting as the agent for Fannie Mae sent Plaintiff a written

agreement to permanently modify Plaintiff's Note and Deed of

3 - TEMPORARY RESTRAINING ORDER

Trust as follows:  (1) Reduce the interest rate on the loan from 6.25% to 2% for an initial five year period, with the rate increasing to 3% in the sixth year, 4% in the seventh year, and 5% in the eighth year through maturity; (2) Reduce the monthly interest-only payment to $661.10 for an initial five year period, with the payment increasing to $878.10 in the sixth year, $1,143.09 in the seventh year, and $1,398.08 in the eighth year through maturity, and; (3) Bring the loan current by adding the total delinquency, $17,892.20, to the principal balance.  *See* Compl., Ex. B at 1.  The Modification Agreement provided after modification Plaintiff's initial monthly payment would be $1,114.23.

In order to accept the terms of the Modification Agreement BAC required Plaintiff to execute the Modification Agreement in the presence of a notary and to return to BAC by January 7, 2010, the executed Agreement with the first payment of $1,114.23 in a preaddressed, prepaid FedEx envelope provided to Plaintiff by BAC.

Plaintiff alleges he executed the Modification Agreement before a notary and mailed the required materials as well as a cashier's check for $1,114.23 to BAC in the provided envelope before January 7, 2010.

On January 13, 2010, BAC returned the cashier's check, but not the signed Modification Agreement to Plaintiff by mail.

According to Plaintiff, he called BAC and was informed BAC had accepted the Modification Agreement and the cashier's check had been returned to Plaintiff in error.  BAC instructed Plaintiff to resend the check to the address noted in the Modification Agreement.

On January 21, 2010, MERS executed an Assignment of Trust Deed in which it

> grant[ed], convey[ed], assign[ed], and
> transfer[red] . . . all beneficial interest [to
> BAC] under that certain Deed of Trust, dated
> 09/20/2006, executed by JEFFREY D. BARNETT,
> Grantor(s) to FIRST AMERICAN TITLE, Trustee, and
> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as
> Beneficiary.

Compl., Ex. D at 1.  On that same day, BAC executed an Appointment of Successor Trustee naming Defendant ReconTrust Company, N.A., as Successor Trustee of the Trust Deed.

On January 26, 2010, Plaintiff resent the cashier's check to BAC by express mail to the address noted in the Modification Agreement.

On January 28, 2010, ReconTrust recorded the Assignment of Trust Deed in the real property records of Washington County, Oregon.

On January 28, 2010, Plaintiff received a Notice of Sale from ReconTrust, listing a scheduled foreclosure sale date of June 4, 2010.  Plaintiff called BAC and BAC confirmed it had accepted the Modification Agreement.  BAC informed Plaintiff that

5 - TEMPORARY RESTRAINING ORDER

because the loan had been permanently modified it would cancel
the foreclosure sale.  BAC subsequently cancelled the June 4,
2010, foreclosure sale.

On January 29, 2010, Plaintiff received a monthly statement
from BAC noting the principal balance, interest rate, and monthly
payment amount as set out in the Modification Agreement as well
as $90 in unspecified "fees due."

Plaintiff called BAC to inquire about the "fees due" and
again was told BAC had accepted the Modification Agreement and
that the $90 fee was probably a modification fee.

According to Plaintiff, on February 17, 2010, without notice
to Plaintiff BAC reduced the principal balance to the amount of
principal owing before the Modification Agreement.  On
February 25, 2010, BAC issued Plaintiff a monthly statement
identifying the $1,114.23 Plaintiff submitted with the
Modification Agreement as a "partial payment."  BAC failed to
apply the payment to the modified loan and instead placed the
payment in a "suspense account."

After he received the February 25, 2010, statement Plaintiff
called BAC to inquire about the readjustment of the principal
balance and designation of his payment as a "partial payment."
Plaintiff alleges BAC again confirmed it had accepted the
modification but because there was a backlog of modifications,
"not all departments have access to modification information, and

6 - TEMPORARY RESTRAINING ORDER

. . . it would take time for the 'codes' to update." Plaintiff
alleges BAC instructed him to continue to make the modified
payments and advised Plaintiff it could take several months for
his monthly statements to reflect the Modification Agreement.

Plaintiff alleges he made the payments required under the
Modification from February through August 2010, but BAC continued
to fail to apply any of his payments to interest or escrow and
instead to post those payments to the "suspense account."

On August 24, 2010, ReconTrust recorded a Notice of Default
and Election to Sell Plaintiff's property in the real property
records of Washington County, Oregon. The Notice of Default
listed, among other things, MERS as the beneficiary of the Trust
Deed; Plaintiff's monthly payments under the Note as $2,471.38;
the interest rate for the Note as 6.25%; and the principal
balance of the Note as the principal balance before Plaintiff
executed the Modification Agreement.

On December 9, 2010, Plaintiff's sent a letter to ReconTrust
and BAC noting the loan modification, Plaintiff's payments, and
defects in the pending foreclosure sale. Plaintiff requested BAC
and ReconTrust rescind the foreclosure sale. BAC and ReconTrust
did not rescind the foreclosure sale.

Plaintiff's property is scheduled to be sold at public
auction on February 28, 2011.

On February 18, 2011, Plaintiff filed a Complaint in this

7 - TEMPORARY RESTRAINING ORDER

Court bringing claims against BAC for (1) fraud; (2) violation of the Oregon Unfair Trade Practices Act (OUTPA), Or. Rev. Stat. § 646.605, *et seq*; (3) violation of the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2605; violation of Or. Rev. Stat § 86.205, *et seq.*; and (4) accounting.  Plaintiff also brings claims against BAC and Fannie Mae for (1) specific performance of the Modification Agreement, (2) breach of the Modification Agreement, and (3) promissory estoppel.  Plaintiff brings claims against ReconTrust for (1) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*; (2) violation of Oregon's Unlawful Debt Collection Practices Act (UDCPA), Or. Rev. Stat. § 646.639, *et seq.*; and (3) breach of trustee's duty.  Plaintiff seeks damages and injunctive and/or declaratory relief.

On February 18, 2011, Plaintiff also filed a Motion for Temporary Restraining Order and a Preliminary Injunction in which Plaintiff moves for the entry of an order preventing Defendants from proceeding with the February 28, 2011, non-judicial foreclosure sale until the Motion for Preliminary Injunction can be heard and a preliminary injunction enjoining Defendants from selling Plaintiff's residence in a non-judicial foreclosure sale pending a trial on the merits.

## STANDARDS

A party seeking a temporary restraining order or preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance For The Wild Rockies v. Cottrell*, No. 09-35756, 2011 WL 208360, at *4 (9th Cir. Jan. 25, 2011)(citing *Winter*, 129 S. Ct. at 392). Accordingly, the Ninth Circuit has held "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*, at *7.

"An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 376, 381.

## DISCUSSION

I. **Merits**

Plaintiff seeks an order preventing Defendants from proceeding with the proposed foreclosure sale of Plaintiff's property as scheduled because, among other things, Defendants failed to comply with Oregon Revised Statute § 86.735(1), BAC and Fannie Mae failed to satisfy "all conditions precedent to declaring a default and accelerating the Note," the Notice of Default does not comply with Oregon Revised Statute § 86.745, and BAC and Fannie Mae breached the Modification Agreement.

A. **Plaintiff is likely to succeed in proving Defendants failed to comply with Oregon Revised Statute § 86.735(1).**

In *Burgett v. Mortgage Electronic Registration Systems*, District Judge Michael Hogan explained the mortgage practice engaged in by MERS as follows:

> "In 1993, the Mortgage Bankers Association, Fannie Mae, Freddie Mac, the Government National Mortgage Association (Ginnie Mae), the Federal Housing Administration, and the Department of Veterans Affairs created MERS. MERS provides 'electronic processing and tracking of [mortgage] ownership and transfers.' Mortgage lenders, banks, insurance companies, and title companies become members of MERS and pay an annual fee. They appoint MERS as their agent to act on all mortgages that they register on the system. A MERS mortgage is recorded with the particular county's office of the recorder with 'Mortgage Electronic Registration System, Inc.' named as the lender's nominee or mortgagee of record' on the mortgage. The MERS member who owns the beneficial interest may assign those beneficial ownership rights or servicing rights to another MERS member.

> These assignments are not part of the public
> record, but are tracked electronically on MERS's
> private records.  Mortgagors are notified of
> transfers of servicing rights, but not of
> transfers of beneficial ownership."

2010 WL 4282105, at *2 (D. Or. Oct. 20, 2010)(quoting Gerald
Korngold, *Legal and Policy Choices in the Aftermath of the
Subprime and Mortgage Financing Crisis*, 60 S.C. L.Rev. 727,
741-42 (2009)).  In *Burgett*, the plaintiff, a mortgagee, brought
an action against MERS and the servicer of the plaintiff's
mortgage loan alleging, among other things, a claim for breach of
contract and seeking declaratory relief to prevent a foreclosure
sale of his property.  The plaintiff contended the MERS practice
set out above was not permitted under Oregon trust-deed law
because it allowed assignment of beneficial interests without
recording.  *Id.*  The defendants moved for summary judgment.
Judge Hogan noted the plaintiff's contention did not "necessarily
mean that the arrangement violates the Oregon Trust Deed Act such
that foreclosure proceedings could not be initiated by MERS or
its substitute trustee."  *Id.*  Judge Hogan, however, denied the
defendants' motion for summary judgment as to the plaintiff's
request for declaratory relief and claim for breach of contract
on the ground that the defendants failed to "record assignments
necessary for the foreclosure."  *Id.*, at *3.  Judge Hogan
reasoned:

> Under ORS 86.705(1) a "'Beneficiary' means the
> person named or otherwise designated in a trust

11 - TEMPORARY RESTRAINING ORDER

deed as the person for whose benefit a trust deed
is given, or the person's successor in interest,
and who shall not be the trustee unless the
beneficiary is qualified to be a trustee under ORS
86.790(1)(d)."  Plaintiff contends that MERS
cannot meet this definition because there is no
evidence that the trust deed was made to benefit
MERS.  However, the trust deed specifically
designates MERS as the beneficiary.  Judge Henry
C. Breithaupt provides a persuasive discussion
related to this issue:

> [T]he interest of MERS, and those for whom it
> was a nominee, in question here was recorded
> and known to Plaintiff when it received the
> litigation guarantee document prior to
> starting this action.
>
> The Statutes do not prohibit liens to be
> recorded in the deed of records of counties
> under an agreement where an agent will appear
> as a lienholder for the benefit of the
> initial lender and subsequent assignees of
> that lender-even where the assignments of the
> beneficial interest in the record lien are
> not recorded.  It is clear that such
> unrecorded assignments of rights are
> permissible under Oregon's trust deed statute
> because ORS 86.735 provides if foreclosure by
> sale is pursued all prior unrecorded
> assignments must be filed in connection with
> the foreclosure.  The trust deed statutes
> therefore clearly contemplate that
> assignments of the beneficial interests in
> obligations and security rights will occur
> and may, in fact, not have been recorded
> prior to foreclosure.  The legislature was
> clearly aware such assignments occurred and
> nowhere provided that assignments needed to
> be recorded to maintain rights under the lien
> statutes except where foreclosure by sale was
> pursued.

Letter Decision in *Parkin Electric, Inc. v.
Saftencu*, No. LV08040727, dated March 12, 2009
(attached as Exhibit C to the second declaration
of David Weibel (# 60)).

12 - TEMPORARY RESTRAINING ORDER

The problem that defendants run into in this case is an apparent failure to record assignments necessary for the foreclosure.  As Judge Breithaupt notes, ORS § 86.735 provides that if foreclosure by sale is pursued, all prior unrecorded assignments must be filed in connection with the foreclosure.  ORS § 86.735(1) specifically provides

> The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
>
> (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated.

Id., at *2-*3.  Judge Hogan noted Oregon Revised Statute § 86.735 requires any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee to be recorded.  The record in Burgett, however, did not reflect all transfers to the subsequent lenders/servicers had been recorded. Id.

Similarly, in Ringard-Guirma v. Bank of America, District Judge Garr M. King granted the plaintiff, a mortgagee, a temporary restraining order against the defendants, MERS and others, prohibiting the defendants from conducting a foreclosure sale of the plaintiff's home because the plaintiff established "nothing [was] recorded with Multnomah County [that] demonstrates that LSI Title Company of Oregon, LLC is the successor trustee." No. 10-CV-1065-PK, 2010 WL 3655970, at *2 (D. Or. Sept. 15,

13 - TEMPORARY RESTRAINING ORDER

2010).  Judge King reasoned:

> Pursuant to ORS 86.790, the beneficiary may
> appoint a successor trustee.  However, only "[i]f
> the appointment of the successor trustee is
> recorded in the mortgage records of the county or
> counties in which the trust deed is recorded" is
> the successor trustee "vested with all the powers
> of the original trustee."  ORS 86.790(3).
> Accordingly, unless the appointment of LSI Title
> Company of Oregon, LLC was recorded, the purported
> successor trustee has no "power of sale"
> authorizing it to foreclose Rinegard-Guirma's
> property.  *See* ORS 86.710 (describing trustee's
> power of sale); ORS 86.735 (permitting foreclosure
> by advertisement and sale but only if "any
> appointment of a successor trustee [is] recorded
> in the mortgage records in the counties in which
> the property described in the deed is situated").
>
> Similarly, she is likely to experience irreparable
> harm if her home is foreclosed upon.

*Id.*

The Court finds persuasive the reasoning in *Burgett* and

*Rinegard-Guirma* as to MERS status in the case on this record.

The Court, therefore, concludes Plaintiff has established he is

likely to succeed as to his request for injunctive and/or

declaratory relief related to Defendants' failure to comply with

Oregon Revised Statute § 86.735.  Plaintiff also has established

MERS, who was the recorded beneficiary of the trust deed,

assigned successor trustees to the trust deed but failed to

record the appointment of any successor trustee as required

before a nonjudicial foreclosure sale may be conducted under

Oregon law.

14 - TEMPORARY RESTRAINING ORDER

**B.   Plaintiff is likely to succeed in proving BAC and Fannie Mae failed to satisfy the conditions precedent to declaring a default and accelerating the Note.**

As noted, the Trust Deed required, among other things, BAC and/or Fannie to provide 30 days notice to Plaintiff before acceleration of the Note.  The Trust Deed required the notice to advise Plaintiff:  (a) of the default; (b) of the action required to cure the default; (c) of a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified may result in acceleration of the debt.  In addition, the Trust Deed specifically provided

> [i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

Compl., Ex. A at 12.  The Trust Deed did not contain any provision that would allow Defendants to accelerate the debt without providing the notice set out in Trust Deed 30 days prior to acceleration.

Plaintiff alleges Defendants did not provide Plaintiff with the notice required by the Trust Deed.  Plaintiff contends because BAC and Fannie Mae failed to provide the required notice, they failed to satisfy the conditions precedent for accelerating the debt and declaring Plaintiff to be in default.  The Court agrees and concludes Plaintiff has established for purposes of

15 - TEMPORARY RESTRAINING ORDER

his Motion for a Temporary Restraining Order that he is likely to succeed as to his request for injunctive and/or declaratory relief related to Defendants' failure to comply with conditions precedent to accelerating his debt and declaring Plaintiff to be in default.

   C.   **Plaintiff is likely to succeed in proving the Notice of Default does not comply with Oregon Revised Statute § 86.745.**

      Plaintiff asserts the August 24, 2010, Notice of Default recorded by ReconTrust does not comply with Oregon Revised Statute § 86.745 and, therefore, ReconTrust is not entitled to proceed with the foreclosure sale.

      Oregon Revised Statute § 86.753(3) provides in pertinent part that a trustee may foreclose a deed of trust by sale if "[t]he trustee . . . has filed . . . in the county clerk's office in each county where the trust property . . . is situated, a notice of default containing the information required by ORS 86.745." Oregon Revised Statute § 86.745 provides in pertinent part:

         The notice of sale shall:

         (1) List the names of the grantor, trustee and beneficiary in the trust deed, and the mailing address of the trustee.

                  * * *

         (4) State the default for which the foreclosure is made.

         (5) State the sum owing on the obligation that

the trust deed secures.

\* \* \*

(9)  If the property includes one or more dwelling units, as defined in ORS 90.100, include a notice addressed clearly to any person who occupies the property and who is or might be a residential tenant. The notice required under this subsection must:

(a)  Include contact information for the Oregon State Bar and a person or organization that provides legal help to individuals at no charge to the individual;

(b)  Include information concerning the right the person has to notice under ORS 86.755 (5)(c) and state that the person may have additional rights under federal law;

(c)  Be set apart from other text in the notice of sale.

Oregon Revised Statute § 86.745(9) also sets out the form in which notice to residential tenants must be provided.

Plaintiff alleges ReconTrust's Notice does not comply with § 86.745(1) because although ReconTrust claims to be the Trustee, the Notice lists the trustee as First American Title. In addition, the Notice lists MERS as the beneficiary, however, in the Assignment of Trust Deed that ReconTrust recorded on January 28, 2010, BAC is listed as the beneficiary.

Plaintiff alleges the Notice does not comply with § 86.745(4) and (5) because ReconTrust "knowingly or negligently misstated the alleged default and principal balance."

Finally, Plaintiff alleges the Notice does not comply

17 - TEMPORARY RESTRAINING ORDER

with § 86.745(9) because it does not contain the statutory notices required by that section nor does it contain the statutory language required by that section.

The Court concludes Plaintiff has established for purposes of his Motion for Temporary Restraining Order that he is likely to succeed as to his request for declaratory and/or injunctive relief related to Defendants' failure to comply with Oregon Revised Statute § 86.745.

### D.    Plaintiff is likely to succeed in proving BAC and Fannie Mae breached the Modification Agreement.

Plaintiff asserts BAC and Fannie Mae breached the Modification Agreement. The record reflects BAC sent Plaintiff the Modification Agreement and Plaintiff's January 25, 2010, statement from BAC reflects the higher principal balance, lower interest rate, and lower monthly payment set out in the Modification Agreement, which indicates BAC had received and accepted Plaintiff's executed copy of the Modification Agreement and cashier's check. In addition, Plaintiff alleges he spoke with representatives from BAC numerous times and they reassured Plaintiff that BAC had accepted the Modification Agreement. BAC's representatives encouraged Plaintiff to continue to make payments as set out in the Modification Agreement and advised him that it might take several months for his monthly statement to accurately reflect the terms of the Modification Agreement. Nevertheless, BAC failed to credit Plaintiff's payments to

18 - TEMPORARY RESTRAINING ORDER

interest or to escrow and ultimately declared Plaintiff to be in default in breach of the Modification Agreement.

The Court concludes on this record and for purposes of Plaintiff's Motion for Temporary Restraining Order that Plaintiff is likely to succeed on his claim for breach of the Modification Agreement.

### E.   Irreparable Harm

The Court concludes Plaintiff also has established he is likely to experience irreparable harm if the scheduled foreclosure proceeds unabated. The Court, therefore, concludes the balance of hardships tips sharply in Plaintiff's favor, and there are at least serious questions as to the merits of Plaintiff's request for declaratory judgment.

Accordingly, the Court **GRANTS** Plaintiff's Motion for a Temporary Restraining Order and hereby **RESTRAINS** Defendants from proceeding with the February 28, 2011, foreclosure sale of Plaintiff's property as ordered herein.

## II.  Notice under Federal Rule of Civil Procedure 65

Federal Rule of Civil Procedure 65(b) provides in pertinent part:

> (1) Issuing Without Notice.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> > (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the
adverse party can be heard in opposition; and

(B) the movant's attorney certifies in
writing any efforts made to give notice and
the reasons why it should not be required.

Plaintiff's counsel notes in her Declaration that in January 2011 Plaintiff placed BAC and Fannie Mae on written notice that Plaintiff intended to file a Complaint and to seek injunctive relief if the parties were not able to resolve their issues by February 11, 2011.  Counsel notes BAC and Fannie May assigned individuals to review and to respond to Plaintiff's allegations.

On February 17, 2011, Plaintiff's counsel faxed copies of the Complaint, Motion for Temporary Restraining Order, and Memorandum in Support of Plaintiff's Motion to the appropriate individuals at BAC and ReconTrust.  Counsel did not receive any responses to the documents from BAC or ReconTrust.

Also on February 17, 2011, Counsel emailed copies of the Complaint, Motion for Temporary Restraining Order, and Memorandum in Support of Plaintiff's Motion to the appropriate individual at Fannie Mae.  Counsel was informed Fannie Mae "was continuing to research the issues" but Fannie Mae did not respond to counsel's inquiry regarding Fannie Mae's intent to appear.

Plaintiff asserts there will not be sufficient time to serve the Motion and to ensure that the foreclosure sale will be halted.

On this record the Court issues the order temporarily

20 - TEMPORARY RESTRAINING ORDER

restraining Defendants from proceeding with the proposed
foreclosure sale of Plaintiff's property without notice to
Defendants because there is insufficient time before the
scheduled foreclosure sale to compel Defendants to appear and to
respond to the Motion.  In addition, Plaintiff's counsel has made
reasonable efforts to notify Defendants and has been unsuccessful
in securing the presence of a responsive party.  Finally, the
Court concludes the risk of irreparable harm to Plaintiff is
significant when weighed against the temporary delay authorized
by this Order.

## III. Security

Pursuant to Rule 65(c), the Court requires Plaintiff to post
a $500.00 bond or to pay $500.00 into the registry of the Court
for purposes of security by **1:00 p.m., February 25, 2011**, as a
reasonable security for any costs or damages sustained by any
party found to have been wrongfully restrained.


## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#2)
for a Temporary Restraining Order and Preliminary Injunction to
the extent that the Court hereby **TEMPORARILY RESTRAINS** Defendants
from proceeding with the February 28, 2011, foreclosure sale of
Plaintiff's property.  The Court **DIRECTS** Plaintiff to post a
$500.00 bond or to pay $500.00 into the registry of the Court for

purposes of security by **1:00 p.m., February 25, 2011.**

IT IS SO ORDERED.

DATED this 23th day of February, 2011.

This order is issued on February 23, 2011, at 2:00 p.m., and expires on March 9, 2011, at 2:00 p.m., unless extended by order of the Court.

ANNA J. BROWN
United States District

22 – TEMPORARY RESTRAINING ORDER